**Anthony VAN DE WALLE, Plaintiff-Appellee,**

v.

**AMERICAN CYANAMID COMPANY, Defendant-Appellant.**

No. 72-2406.

United States Court of Appeals, Fifth Circuit.

April 23, 1973.

Rehearing Denied May 18, 1973.

---

Ralph S. Johnson, New Orleans, La., for defendant-appellant.

Charles R. Maloney, New Orleans, La., for plaintiff-appellee.

Before GEWIN, SIMPSON and RONEY, Circuit Judges.

GEWIN, Circuit Judge:

Late one Sunday evening in August 1970 Anthony Van De Walle was grievously injured in an accident which occurred while he was en route from his home to his place of employment. Alleging that his accident arose in the course of his employment, Van De Walle brought this diversity suit against his employer, American Cyanamid Company, seeking total and permanent disability benefits under the Louisiana Workmen's Compensation Act.[1] After a bench trial the district court awarded a substantial judgment in favor of Van De Walle from which American Cyanamid appeals. Since we cannot agree with the district court's application of the controlling law in reaching its decision that the accident which befell Van De Walle occurred in the course of his employment, we reverse.

On the date of his accident Van De Walle had completed approximately three years of service as a draftsman at American Cyanamid's chemical manufacturing plant in Waggaman, Louisiana. His residence was located in Violet, Louisiana, and he customarily drove the thirty-five miles to appellant's plant in his own car. Because the chemical manufacturing done at the Waggaman plant had a deleterious impact on the equipment used in the process, the plant could not function continuously for more than twelve months or so without undergoing a major overhaul. When a major overhaul became necessary, American Cyanamid would begin an operation known as a "turnaround" during which particular units of the plant would be temporarily shut down so that the equipment could be serviced and repaired.

As soon as a turnaround commenced, the plant's employees were required to switch from their regular eight hour a day work schedule to an around-the-clock format under which each employee was on duty for a twelve hour shift. The scheduling of shifts was somewhat flexible in that each worker was informally consulted as to what hours he would prefer. Since American Cyanamid classified any work performed in addition to the requisite forty hours a week as overtime, part of each twelve hour shift in a turnaround was overtime work for which an employee was entitled to be paid at the standard time and a half rate. Once begun, a turnaround continued until all essential maintenance work was completed, usually a period of from seven to ten days. Thus turnarounds were in a sense extraordinary procedures of uncertain duration, but they were planned in advance and of necessity occurred with some regularity.

Ordinarily Van De Walle worked eight hours of the day, five days of the week, from Monday through Friday. But on the Friday preceding the Sunday evening in question, American Cyanamid began another turnaround at its Waggaman plant. Although Van De Walle's vacation had been scheduled to start after he finished work on Friday, he decided to forego it and accordingly arranged with his immediate supervisor and a co-employee named Gonzales to return at midnight to begin a twelve hour shift lasting until noon Saturday. On Saturday Van De Walle agreed to continue working the midnight to noon shift; however, he also made a special arrangement with Gonzales whereby he

1. LSA–R.S. 23–1021 et seq.

would relieve Gonzales an hour early on Sunday night at 11:00 p. m. As a result of the turnaround and his understanding with Gonzales, Van De Walle was en route to the Waggaman plant on Sunday night. A flat tire forced him to stop his car while crossing a river bridge, and while repairing it, he was struck by another vehicle sustaining serious injuries.

At the time of Van De Walle's accident, American Cyanamid had in effect a policy of paying its personnel a travel allowance for unscheduled emergency trips to the plant. This policy was described in a "Standard Practice Instruction" which clearly stated that each employee was expected to provide his own transportation to and from the plant for his normal work schedule and for all previously scheduled overtime. Trips to and from the plant in a privately owned automobile were compensable if an individual was called in an emergency by his supervisor or department head and asked to report to the plant during off-scheduled hours. Although American Cyanamid did not pay its employees a travel allowance for trips to and from the plant during turnarounds and in spite of Gonzales' testimony that he did not turn in a travel voucher for his trips to the plant during this turnaround, the district court concluded that a turnaround was the kind of emergency contemplated by the "Standard Practice Instruction" and that under it Van De Walle had been entitled to travel expenses for his Sunday night trip to the plant. On this basis, and because Van De Walle would not have been on his way to work when the accident occurred but for the turnaround, the district court decided that the accident did arise in the course of his employment and awarded judgment in Van De Walle's favor.

Under the Louisiana Workmen's Compensation Act a worker is entitled to compensation if he is accidentally injured during the course of employment.[2] As stated in the leading case of Kern v. Southport Mill, an employee is covered by the Act if when injured he was "then engaged about his employer's business and not merely pursuing his own business or pleasure."[3] From these broad guidelines Louisiana courts have fashioned a more specific rule to the effect that an accident occurring while the employee is en route to or from work is not usually considered as within the course of his employment.[4] This rule is apparently grounded upon the premise that the employment relationship is usually suspended from the time the employee quits work to go home until he resumes his job the following day; during the off hours he is on his own.

But this rule is not without at least one well-established and pertinent exception which arises when the rule's underlying premise is absent. If the employer has assumed an interest in the transportation of his workmen to and from work because it serves some useful purpose of his other than simply having employees on the job, then the employment relationship is no longer confined to the job premises and may extend to travel to and from home.[5] Thus the cases hold that when an employee is routinely furnished transportation to or from work as part of the employment agreement, he is covered by the Act if an accident befalls him during transportation.[6] The agreement to furnish transportation indicates that the worker is still on his master's business while traveling to and from work. This exception to the usual rule is available not only when the employer provides transportation as such but also when he

2.  LSA–R.S. 23–1031.

3.  174 La. 432, 141 So. 19, 21 (1932).

4.  Boutte v. Mudd Separators, Inc., 236 So.2d 906, 908 (La.App. 3d Cir. 1970).

5.  Gardner v. Industrial Indemnity Co., 212 So.2d 452, 455 (La.App. 1st Cir. 1968).

6.  Welch v. Travelers Insurance Co., 225 So.2d 623, 626 (La.App. 1st Cir. 1969). Accord Boutte v. Mudd Separators, Inc., 236 So.2d 906, 908 (La.App. 3d Cir. 1970) and Gardner v. Industrial Indemnity Co., 212 So.2d 452, 455 (La.App. 1st Cir. 1968).

pays a travel allowance in lieu thereof, and it matters not whether the transportation agreement is expressly stated or is merely implicit in the working arrangement.[7] But in no event is the exception applicable when the employment relationship does not encompass travel to and from work and the employer receives no special benefit from it. For the Act's purpose is to protect workers from the hazards that accompany their job and not to insure them against the common perils of life.[8]

■ Turning to the matter at hand, after carefully considering the record and the contentions of the parties, we are forced to conclude that we would abort the purpose of Louisiana's Workmen's Compensation Act were we to permit its coverage to be extended to Van De Walle's accident. It is undisputed that when injured he was en route to work. Based on its determination that under company policy Van De Walle was due a travel allowance for his trip, the district court held that his injuries were compensable under the exception to the general rule concerning travel to and from work. But American Cyanamid's "Standard Practice Instruction" without qualification states that a travel allowance is to be paid only for unscheduled emergency trips to and from the plant, and Van De Walle's Sunday night shift had been previously scheduled in informal discussions with his supervisor and Gonzales. Although the turnaround then in effect was undoubtedly not the

routine operation, it was neither unfamiliar nor unexpected, and it can hardly be characterized as an "emergency" as that term is commonly used. The turnaround did nothing more than provoke a temporary change in the hours which the employees worked. It did not create an exception to the normal company policy under which employees were expected to provide their own transportation to and from work. The district court's ruling to the contrary was plain error.[9]

The only difference between the trip to the plant on which Van De Walle was injured and those he made while the plant was on its normal schedule is that the former was made on Sunday night. We cannot perceive any significance in this difference. Van De Walle was not entitled to travel expenses for his trip, and it was of no special unusual benefit to his employer. Turnarounds at the plant occurred at certain intervals when overhauling and repairs were necessary and the practice was considered a usual and normal requirement in the operation of the plant. Van De Walle was simply on his way to work, albeit at an odd hour. In these circumstances his case falls within the general rule that injuries sustained while en route to or from work are not within the course of employment. The judgment of the District Court is vacated and the case is remanded with directions to enter judgment for the appellant.

Vacated and remanded with directions.

---

7. Gardner v. Industrial Indemnity Co., 212 So.2d 452, 457 (La.App. 1st Cir. 1968).

8. Gardner v. Industrial Indemnity Co., 212 So.2d 452, 455 (La.App. 1st Cir. 1968), citing with approval Tavel v. Bechtel Corp., 242 Md. 299, 219 A.2d 43.

9. The district court found that:
   "The situation of a 'turn around' had an emergency atmosphere about it in that it was not a regular, everyday procedure. It was a procedure that may last three days, four days, five days, six days, seven days or ten days. There was no particular designated amount of

time alloted for this 'turn around'.
   ·   ·   ·
   ❊        ❊        ❊        ❊        ❊
   The court finds that the 'turn around' activity that was being followed by the defendant, as interpreted by their own 'standard practice instruction' should have covered the travel allowance for the plaintiff as an emergency trip. The 'turn around' situation at the Fortier plant is such that it should fit the definition of 'emergency' as used within the standard practice instructions."