Rosemary Elliott **HOOPER**

v.

**EXXON CORPORATION, et al.**

Mike **HUDNALL**

v.

**EXXON CORPORATION, et al.**

Mark **EZELL**

v.

**HILYARD DRILLING CO., INC., et al.**

Civ. A. Nos. 81–182–B, 81–183–B and 81–351–B.

United States District Court, M.D. Louisiana.

Sept. 26, 1983.

478

H. Alva Brumfield, III, Baton Rouge, La., for plaintiff.

John M. Roper, New Orleans, La., for Exxon Corp. and Petroleum Cas. Co.

Paul Marks, Jr., Baton Rouge, La., for Hilyard Drilling Co., Inc.

Arthur H. Andrews, Franklin, Moore & Walsh, Baton Rouge, La., for ARDCO Industries, Inc.

David R. Frohn, Lake Charles, La., for third party defendants Charles Myers and Myers Exploration.

William A. Norfolk, Baton Rouge, La., for third party defendant Travelers Ins. Co.

POLOZOLA, District Judge:

These suits were filed to recover damages arising from a vehicular accident which occurred in Grant Parish. Three suits were filed as a result of this accident. Exxon Corporation (Exxon) was named as a defendant in two of the three suits which have been consolidated for trial. In response to the suits filed by Rosemary Elliott Hooper and Mike Hudnall, Exxon has filed a motion for summary judgment. Exxon contends that these plaintiffs' exclusive remedy against it is under the Louisiana Workmen's Compensation Act, R.S. 23:1021, et seq. For reasons which follow, the Court finds Exxon's motion for summary judgment should be granted.

Rosemary Elliott Hooper was the wife of Eugene Hooper, who was killed in the accident which is the subject of these consolidated actions. She is the plaintiff in Civil Action Number 81–182. Exxon is named as one of the defendants in this suit. Mike Hudnall is the plaintiff in Civil Action 81–183. He was a guest passenger in the truck being driven by Eugene Hooper. Exxon is named as one of the defendants in that suit.

A third suit was filed by Mark Ezell and is designated as Civil Action 81–351.

At the time of the accident Eugene Hooper was driving a pickup truck with Mike Hudnall riding as a passenger. The Hooper truck collided with a pickup truck which was leased to Exxon and being driven by Randall Crapse. Crapse, Hooper and Hudnall were all members of a seismographic crew which was working for Exxon.

Exxon contends that Hooper and Hudnall were borrowed employees of Exxon at the time of the accident and, therefore, plaintiffs' tort claims against it are barred by R.S. 23:1062. The issue of whether an individual is a "borrowed employee" is a question of fact. *Johnson v. Alexander,* 406 So.2d 1378 (La.App. 3rd Cir. 1981), rev'd on other grounds, 419 So.2d 451 (La.1982); Malone & Johnson: 13 La. Civil Law Treatise: Workers' Compensation § 58, p. 95 (1980). In essence, it is a question of the right of the employer to control the actions of the employee. See *Benoit v. Hunt Tool Co.,* 219 La. 380, 53 So.2d 137 (1951) and numerous cases following it. The rule was succinctly stated in *Dupre v. Sterling Plate Glass & Paint Co., Inc.,* 344 So.2d 1060, at 1063–64:

> The most widely accepted test cited for establishing an employer-employee relationship involves the right of control.
>
> The right to control has been described to include the following facts: the right to select and discharge the employee, the right to supervise and direct his work, and the method by which it is done, and the manner in which the employee is paid.
>
> Implicit in the right to control is the necessity that the lending employer relinquish its control over its employee to the borrowing employer and that he is performing work for the borrowing employer's business.
>
> Additionally, the concept of the "borrowed employee" doctrine, by its terms, connotes an agreement of some type between the lender and the borrower, that the lender relinquished such control of the employee to the borrower. [Citations omitted].

See also *Vaughn v. Baton Rouge General Hospital,* 421 So.2d 288 (La.App. 1st Cir. 1982); *Liberty Mutual Ins. Co. v. Gulf Oil Corp.,* 559 F.Supp. 777 (E.D.La.1983).

The deposition testimony taken in this case and filed in support of Exxon's motion for summary judgment clearly demonstrates that there is no genuine issue as to the facts necessary to establish that the plaintiffs were borrowed employees of Exxon under Louisiana law at the time of the accident.

Hooper, Hudnall, and the other members of their work group were nominally the employees of Charles E. Myers, d/b/a Myers Exploration Company (Myers). They were assigned to do certain seismographic work for Exxon in the Natchitoches, Louisiana area.

Myers originally contracted to perform seismographic work for Exxon in 1967. His current contract was executed in 1972. Under Paragraph 3 of these contracts, Myers was to maintain control over the "detailed manner and method of doing the work". The contract further asserts that Humble Oil & Refining Co., now Exxon, was "interested only in the result obtained". Myers is, therefore, labelled an independent contractor in the contracts.

The deposition testimony reveals, however, that the seismographic work was not actually performed as stated in the contract referred to above. Therefore, it is necessary for the Court to describe in detail the manner and method by which the seismographic work was performed by the Myers crew for Exxon.

The seismographic operations being conducted by Exxon required several groups of workers. Charles E. Myers testified that there were basically four groups of workers: permitting, surveying, drilling, and recordation.[1] Permitting work required employees to acquire the landowners' permission to conduct operations. The permitting work was done exclusively by Exxon employees. The drilling operations were conducted by a drilling contractor, Hilyard Drilling Co., Inc. Therefore, Myers' workers were involved only in the surveying and recordation functions. In the survey crew, Myers' men were principally assigned to cut brush to allow the survey reading to be

---

1. Dep. Charles E. Myers, p. 28.

made. All survey operations were directed by Exxon employees.[2]

The recordation operations were divided into two crews: "front" and "back". The majority of the Myers employees, including Hooper and Hudnall, worked on these recordation crews. The front crew was assigned to place seismic detection geophones, or "jugs", and cables in the field and the back crew was assigned to pick up the equipment when operations were complete.

The deposition testimony reveals that this work was directly controlled and supervised by William "Woodsey" Ford, the cable crew foreman, and Charlie Stewart, the party chief, both of whom were Exxon employees.[3] Stewart made all of the hiring decisions and submitted the paperwork to Myers only after an employee had begun work.[4] Both Exxon and Myers had the opportunity to terminate crew members, but in actual practice, few employees had been terminated.[5] Recommendations for pay increases were made by Ford to Stewart and had to be approved by B.A. Henkhaus, an Exxon supervisor.[6]

Apparently Myers' only involvement with the crew was that he kept its payroll records, issued paychecks, and occasionally visited the work site.[7] Myers also paid a per diem to each employee for living expenses in the work area. This money was paid in a lump sum to Stewart who delivered the expense money to the men in cash.[8] Myers was paid by Exxon at a rate of 135% of the wages paid to his employees.[9] Myers was also reimbursed by Exxon for his per diem payments.[10]

Myers only made occasional visits to the work site at two to three month intervals.[11] In fact, two crew members testified that they had not met Myers until after the accident which gave rise to these suits.[12] Exxon furnished all work tools and equipment.[13] There is no testimony which indicates that the Myers employees possessed any special skills or training.

Thus, it is clear from the facts presented in this case that Exxon supervised the crew's work details, selected all new employees, maintained the right to discharge workers, set the crew's wages, and provided the work equipment. Therefore, there is no genuine issue of fact presented as to Exxon's right to control the Myers' workers. Charles Myers' only connection with the crew was the payment of its wages. Payment of wages is not proof of an employer-employee relationship when another party controls the workers' actions. *Morgan v. Equitable General Insurance Co.*, 383 So.2d 1067 (La.App. 3rd Cir.1980). Even if Myers maintained some degree of control over the termination of employees and the termination of his relationship with Exxon, the record demonstrates, without rebuttal, that Exxon maintained sufficient control over the work of Eugene Hooper and Mike Hudnall for the Court to hold that Hooper and Hudnall were employees of Exxon within the meaning of the Louisiana Workmen's Compensation Act.

The plaintiffs also question whether the injured workers were acting in the course and scope of their employment at the time of their injury. The record reveals no gen-

2. Dep. Myers, pp. 29–31.

3. Dep. Myers, pp. 11, 28, 34, 37, 39, 80; Dep. Charlie Stewart, pp. 5–6; Dep. William "Woodsey" Ford, pp. 40, 133; Dep. Michael D. Hudnall, p. 8; Dep. Randall Crapse, pp. 11, 14, 82; Dep. Mark Ezell, p. 6.

4. Dep. Stewart, p. 42; Dep. Ford, pp. 126-27; Dep. Myers, pp. 78–79.

5. Dep. Stewart, p. 43; Dep. Ford, pp. 19, 127; Dep. Myers, pp. 79, 103.

6. Dep. Ford, pp. 129 30; Dep. Stewart, pp. 45 46.

7. Dep. Myers, pp. 12, 34.

8. Dep. Stewart, p. 45; Dep. Myers pp. 81–82; Dep. Hudnall, p. 21.

9. Dep. Myers, pp. 109–10.

10. Dep. Myers, pp. 80–81.

11. Dep. Ford, p. 18; Dep. Myers, pp. 82–83; Dep. Ezell, p. 6.

12. Dep. Hudnall, p. 20, Dep. Crapse, p. 12.

13. Dep. Myers, p. 80; Dep. Stewart, p. 44; Dep. Ford, p. 126; Dep. Crapse, p. 13.

uine issue as to the following facts. The seismographic crew usually stayed in a motel near the area in which they were working. At the time of the accident, most of the crew members were staying at the Revere Inn in Natchitoches, Louisiana. Rosemary Hooper stayed with her husband at the motel prior to his death. The Exxon field office was also located at this motel. The crew assembled at the motel each morning and was driven to the work site in a six-man pickup truck owned by Exxon. Hooper was the assigned driver of the pickup which carried the crew to the work site. At the time of the accident, the pickup truck was returning to the motel at the end of the work day.

The plaintiffs seek to rely on the "threshold doctrine" under which an employee is not considered acting in the course of his employment while travelling to and from work. While this is an accurate statement of a general rule of worker's compensation law, an exception exists when "the employer has interested himself in the transportation to and from work." Malone & Johnson, supra, at § 170, p. 355, and the numerous cases cited therein. See also *Naquin v. Texaco, Inc.*, 423 So.2d 31 (La.App. 1st Cir. 1982); *Van De Walle v. American Cyanimid Co.*, 477 F.2d 20 (5th Cir.1973); *Fox v. Commercial Union Ins. Co.*, 396 So.2d 543 (La. App. 3rd Cir.1981); *Prothro v. Louisiana Paving Co., Inc.*, 399 So.2d 1229 (La.App. 3rd Cir.1981).

The Court particularly finds the *Naquin* case indistinguishable from this case. In *Naquin,* the plaintiff/employee was seeking workmen's compensation disability benefits for injuries received as a result of an accident on a crew boat. The court found that the plaintiff, a camp cook, was acting in the course of his employment while riding in the crew boat provided by his employer for the trip to and from the work camp. In the instant case, it is undisputed that Exxon furnished the transportation for the Myers crew from their work area back to the motel every work day. Transportation was, therefore, incident to their employment. Consequently, the Myers crew was acting in

the course and scope of their employment at the time of the accident.

It must be noted that the plaintiffs have alleged that they were acting in the course and scope of their employment in parallel workmen's compensation actions in state court. Furthermore, Exxon has filed the affidavit of Charles Stewart in response to the plaintiffs' "threshold doctrine" claim. In this affidavit Stewart states that the Myers crew was paid from the time they left the Revere Inn until they returned.

Therefore, the Court finds as a matter of fact and law that Eugene Hooper and Michael D. Hudnall were borrowed employees of Exxon acting in the course and scope of their employment at the time of the accident which gave rise to these suits. Thus, the plaintiffs' tort actions against Exxon are barred by La.R.S. 23:1032. For these reasons, Exxon's motion for summary judgment must be granted.

Therefore:

IT IS ORDERED that the motion of Exxon Corporation for summary judgment be and it is hereby GRANTED.