315 So.2d 344 (1975)
Douglas WRIGHT
v.
RED BALL MOTOR FREIGHT, INC.
No. 10345.
Court of Appeal of Louisiana, First Circuit.
July 8, 1975.
*345 William H. Cooper, Jr., Baton Rouge, for appellant.
Walton J. Barnes, II, Baton Rouge, for appellee.
Before LANDRY, BLANCHE and YELVERTON, JJ.
LANDRY, Judge.
Red Ball Motor Freight, Inc. (Employer) appeals judgment awarding its employee, Douglas Wright (Employee), workman's compensation benefits in the sum of $49.00 weekly, for the period March 24, to November 1, 1973. The judgment is predicated on a back injury (herniated disc) sustained by Employee on March 23, 1973, during the course of his employment by *346 Employer as a truck driver. Employee has answered the appeal claiming additional compensation for impairment of a physical function, and also claiming penalties and attorney's fees for Employer's alleged arbitrary refusal to pay either compensation benefits or medical expenses. We affirm.
There is serious dispute between the parties concerning whether Employee's injury was sustained in the course and scope of the employment or while Employee was engaged in the week end recreation of playing basketball with Employee's nine year old son. It is undisputed, however, that prior to the alleged accident of March 23, 1973, Employee had been employed by Red Ball for six or seven years. It is also conceded that Employee's record for promptness, absenteeism and performance was excellent. It is also acknowledged that at the time of trial, Employee had resumed his employment with Red Ball and was performing the duties of truck driver without complaint.
Plaintiff's testimony is to the effect he reported for work at his usual hour of 10:30 on the morning in question. After punching in, he made a delivery to the Copolymer Plant in Baton Rouge, returning to Red Ball around noon. After lunch, he was instructed by his Dispatcher, William K. Adams, to secure an empty trailer from the rear of Red Ball's premises. Adams designated a certain trailer containing a single drum and ordered plaintiff to remove the drum from the trailer and bring the trailer to a loading area. The trailer in question had been backed up to a dock near where some lengths of pipe were stacked. To make room for a place to put the empty drum, plaintiff decided to move the pipe. In the process of shifting the pipe about, plaintiff twisted his back and immediately felt sharp pain radiating from his back down into his bowels and rectum. Plaintiff rested a while and apparently recovered. When the pain subsided, plaintiff resumed his daily work and continued the rest of the day without pain. The following morning, Saturday, March 24, 1973, plaintiff awoke feeling pain and stiffness. He related the pipe incident to his wife and noted that he thought the pain he was experiencing that morning was the result of the return of an old prostatitis condition. The next day, Sunday, plaintiff experienced continuation of his back pain. He felt that exercise might loosen him up so he decided to engage in a basketball drill with his nine year old son. After 10 to 15 minutes of such activity, plaintiff noted aggravation of his condition and discontinued play. On arising Monday, morning, plaintiff could barely get out of bed. At about 7:30 A.M., he called Red Ball and spoke with Adams, and reported inability to report for work. Adams inquired whether plaintiff's condition resulted from a job related injury. Plaintiff then related the pipe moving incident to Adams, and also mentioned something about plaintiff's prostatitis. Adams advised plaintiff to see a physician. Plaintiff then reported to Dr. Facundus who had previously treated plaintiff for prostatitis. Dr. Facundus ordered plaintiff hospitalized immediately. Plaintiff was first put in traction for about three days. He returned home and within a short time was again hospitalized and subjected to surgery.
William K. Wright testified in effect that plaintiff did call on the morning of March 26, 1973, and report inability to work because plaintiff had been injured over the week end while playing basketball with plaintiff's son. Wright denied that plaintiff told him about an injury sustained while lifting pipe on the job for Red Ball. According to Wright, company records show that plaintiff made no delivery to Copolymer on the day in question, but that plaintiff made several deliveries on that afternoon, following which plaintiff left work at 6:00 P.M. Wright also testified that company records further show that on the day in question, plaintiff did not drive a tractor-trailer, but only a bobtailed truck.
Employee's version of the accident was corroborated by the testimony of his wife. She stated that on Saturday morning, *347 March 24, 1973, plaintiff related the pipe incident to her.
Robert Louis, Union Steward, co-employee of plaintiff, testified that he visited plaintiff in the hospital, at which time plaintiff advised him that plaintiff was injured while attempting to move a length of pipe. Louis also stated that on April 12, 1973, he raised the matter of plaintiff's injury with W. L. Runge, Manager of the Red Ball terminal. Runge advised Louis that plaintiff's injury was not a compensation case, and suggested that plaintiff apply for union insurance which paid more than workmen's compensation.
Runge denied that plaintiff ever reported an employment related accident. He also denied having suggested to Louis or anyone else that plaintiff apply for union insurance instead of workmen's compensation benefits. Runge conceded, however, that he received a letter dated May 22, 1973, from counsel for plaintiff making demand for workmen's compensation. He also acknowledged he wrote a letter to R. W. Broome (apparently an adjuster) in which he expressed doubt concerning whether plaintiff's injury was job related, and in which he conceded being puzzled as to why plaintiff sought compensation although Runge understood the union's insurance would pay plaintiff more.
Dr. John F. Loupe, Orthopedic Surgeon, examined plaintiff in the hospital on March 26, 1973. He suspected a ruptured disc and put plaintiff in traction for two or three days, following which plaintiff was allowed to return home. This conservative treatment proved ineffective, and Dr. Loupe again hospitalized plaintiff on April 5, 1973. A myelogram taken that same day disclosed a ruptured disc at the L4-5 level. A laminectomy was performed April 6, 1973, fusing the above mentioned vertebrae. Dr. Loupe testified that on his first examination, plaintiff related a history of twisting his back while lifting pipe at work. He also noted that plaintiff had a remarkable recovery, having fully recuperated in seven months whereas the usual recuperative period for such surgery is approximately one year for males. Dr. Loupe considered plaintiff a most cooperative patient. He released plaintiff as able to resume all former duties on November 1, 1973, and finally discharged plaintiff March 1, 1974. Dr. Loupe was of the view that plaintiff suffered a 15% total bodily disability but that, nevertheless, plaintiff was able to resume his former employment without pain or discomfort.
Dr. James T. Kilroy, Orthopedic Surgeon, examined plaintiff on July 11, 1974. He was amazed that plaintiff was completely without pain notwithstanding the laminectomy. He considered plaintiff to have minimal 15% disability of the entire body merely because plaintiff had undergone a laminectomy.
Employer complains bitterly that plaintiff has failed to establish an employment related injury as required by law. In so contending, Employer cites numerous cases holding that the burden rests upon the employee to show an accident occurring within the scope and during the course of employment by a preponderance of evidence. This, according to Employer, means that the employee's testimony is alone insufficient to support a claim for compensation. With this rule of law, we are in agreement. However, our jurisprudence holds that the testimony of an employee alone may establish a work related disabling accident where such testimony is corroborated by other credible evidence. Montgomery v. Delta Concrete Products Co., Inc., La.App., 290 So.2d 769; Delafosse v. Industrial Painters, Inc., La.App., 199 So.2d 559.
As did the trial court, we find sufficient corroboration of Employee's testimony in this instance. In addition to the substantiative evidence of Employee's wife, we note that Employee related to Dr. Loupe, on the Monday following the accident, that the injury occurred the previous *348 Friday while Employee was at work. Dr. Loupe was impressed with Employee's narration of the circumstances surrounding the injury and believed Employee was telling the truth. In addition, Employee's work record, as well as his conduct and attitude following injury, is indicative of honesty and integrity.
Employer in this instance is a self-insurer. Consequently, Employee's claim for penalties and attorney's fees, if any, is governed by LSA-R.S. 23:1201.2. The cited statute provides in essence that a self-insured employer shall be liable for penalties in the sum of 12% of the total amount of the employee's claim, and reasonable attorney's fees in the event such an employer shall arbitrarily, capriciously, or without probable cause, fail to pay a claim for compensation within 60 days of notice of such claim.
Citing Montreuil v. Winn Dixie Stores, Inc., La.App., 279 So.2d 701, and Dobbins v. Liberty Mutual Insurance Company, La.App., 280 So.2d 582, counsel for Employee contends the trial court erroneously failed to assess penalties and attorney's fees in this instance. We think it obvious that the trial court found probable cause for Employer's failure to pay in this case. Considering the serious dispute concerning whether Employee's disability was work related, we find no abuse of the trial court's discretion in declining to assess penalties and attorney's fees herein.
Employee's claim for additional benefits for 15% loss of bodily function is predicated upon LSA-R.S. 23:1221 (4) (p), which pertinently provides:
"In cases not falling within any of the provisions already made, * * * where the usefulness of a physical function is seriously permanently impaired, the court may allow such compensation as is reasonable and as in proportion to the compensation hereinabove specifically provided in the cases of specific disability, not to exceed sixty-five percentum of wages during one hundred weeks."
In this case, Employee relies upon the above mentioned medical testimony which establishes a 15% permanent impairment of the usefulness of Employee's back resulting from the laminectomy. In essence, Employee contends he should be given an additional award pursuant to Section 1221(4) (p), above.
The trial court granted Employee compensation at the rate of $49.00 weekly for total temporary disability during the period March 23, to November 1, 1973, or an aggregate of $1,624.00. As noted in Ventress v. Danel-Ryder, Inc., La.App., 225 So.2d 765, compensation awarded pursuant to LSA-R.S. 23:1221(4) is not predicated upon disability. Such an award may be made for permanent impairment of a bodily function which, though not necessarily disabling, will impair an employee for the rest of his life. Such an award is limited to 100 weeks in an amount not exceeding 65% of the employee's wages, subject to the maximum allowable weekly compensation rate provided in LSA-R.S. 23:1202 which, in this instance, is $49.00. However, an award for the loss or impairment of a physical function pursuant to LSA-R.S. 23:1221(4), above, is subject to a credit for compensation paid pursuant to LSA-R.S. 23:1221(1) (2) and (3). LSA-R.S. 23:1223; Miller v. General Chemical Division, La.App., 128 So.2d 39.
An award of compensation pursuant to Section 1221(4)(p), above, is discretionary in that it is not restricted to medical percentage of disability. Instead, it may be based on the trial court's sound discretion to award reasonable compensation thereunder in proportion to the awards for specific losses, Ventress, above; Fruge v. Hub City Iron Works, La.App., 131 So.2d 593.
Under the circumstances, we assume that, in awarding Employee compensation *349 for temporary total disability, the trial court deemed the award to which Employee is entitled under LSA-R.S. 23:1221(1) to be greater than that which the court would have granted pursuant to the discretionary authority vested in the court under Section 1221(4)(p), above.
We find no error on the part of the trial court.
The judgment of the trial court is affirmed; all costs of these proceedings to be paid by defendant-appellant, Red Ball Freight, Inc.
Affirmed.