444 So.2d 1367 (1984)
Harold M. WOODARD, Plaintiff-Appellant,
v.
GEORGE COLE CHEVROLET, INC., et al., Defendants-Appellees.
No. 15927-CA.
Court of Appeal of Louisiana, Second Circuit.
January 16, 1984.
*1368 McKeithen, Wear, Ryland & Woodard by Russell A. Woodard, Columbia, for plaintiff-appellant.
Kostelka, Swearingen & Street by Elmer G. Noah, II, Monroe, for defendants-appellees.
Before MARVIN, FRED W. JONES and SEXTON, JJ.
*1369 MARVIN, Judge.
In this worker's compensation action, claimant appeals a judgment rejecting his demands for benefits for total and permanent disability, penalties and attorney fees. We amend to award schedule benefits under LRS 23:1221(4)(p).
Claimant is an experienced 64-year-old body shop mechanic who worked for more than a decade for the Chevrolet dealer in Arcadia. George Cole, Inc. acquired the dealership in 1975 and sold it to Terry Burke on October 1, 1980, while claimant was so employed.
Claimant sustained a myoligamentous back strain on Friday, May 30, 1980, and resumed working two or three weeks later while still being treated by a Shreveport orthopedist. On August 21, 1980, the orthopedist discharged claimant from further treatment with the diagnosis of lumbar myoligamentous strain superimposed on lumbar spondylolysis with some narrowing of the lumbosacral joint. The orthopedist said that claimant
"had reached maximum improvement ... and will have a partial permanent disability equivalent to fifteen percent of the body as a whole and should be able to do everything required of [him] except the heaviest of manual lifting or straining."
On his first visit to this orthopedist on June 19, 1980, the orthopedist noted that claimant had been taking exercises "for [his] back problems seen in this office a number of years ago." The earlier treatment was revealed to have occurred in 1968. The orthopedist saw claimant also on July 17, 1980, before discharging him on August 21, 1980.
Claimant was referred to the orthopedist by an Arcadia physician who saw him on June 2, 3, and 17, 1980. The Arcadia physician gave him an injection to relax the muscles of the back on each of the first two visits. Claimant had also seen this physician in 1954 for back trouble. The Arcadia physician wrote on his June 17, 1980, report that claimant was "pronounced able to resume work as of no time off." Claimant was never hospitalized for the May 30, 1980, strain and did not again see a doctor until September 21, 1981, when asked to do so by the attorney representing his employer's compensation insurer.
During the time claimant was off work following the May 30, 1980, accident, his employer paid him his minimum weekly guarantee of $125 in lieu of compensation. Claimant earned the greater of 50 percent of the gross charge for his body shop work or his $125 guarantee. His medical bills were paid by his employer's insurer. In the first quarter of 1980, claimant earned $2,090. In the third quarter of 1980, claimant earned $2,353. His earnings averaged about $180 per week. Claimant usually worked alone and called on other employees of the dealership to assist him in handling bulky or heavy items before and after claimant sustained the strain.
Claimant learned that his employer intended to hire an additional body mechanic in mid-June 1981. Claimant did not "approve" of having another employee in the body shop and asked for his vacation pay and said he was "leaving." He had applied for or inquired about social security benefits a month or so before he learned of the intent to hire another employee. Before and after the 1980 accident, he mentioned to a co-employee, who sometimes assisted claimant, that his back was sometimes hurting, but at no time until the suit was filed did he tell his employer or any supervisory employee that he was hurting or that he was disabled. After claimant quit work he returned to the body shop when called from time to time by the Chevrolet dealer to install windshields or other glass and was paid about $35 per job. The new employee in the body shop did not install glass. After claimant left his regular employment in late June 1981, and before claimant filed suit on August 20, 1981, claimant worked on such glass jobs for his former employer about 14 times and without complaint of pain or disability.
Defendants filed an exception of prescription which was heard on June 7, 1982. Claimant and his wife, Cole, Burke, and three employees of the dealership testified *1370 at this hearing. Depositions of three doctors were introduced. LRS 23:1209. The hearing judge overruled the exception, stating that when the evidence was viewed most favorably toward claimant, and for the purposes of the exception, the injury may have manifested itself within one year of the filing of the suit.
The judge who presided at the trial almost a year later had the record of the earlier hearing as evidence before him and heard claimant, Burke and Ms. Burke testify. He also had the depositions of the three doctors and one other expert. This judge found that claimant had not proved a developing injury or "much less, his disability," and that claimant quit his employment because he did not want to work with the new employee who had been hired to come to work in the body shop. The trial court's judgment simply rejected claimant's demands.
Six of claimant's assignments in this appeal essentially complain that the trial judge "overruled" the judge who heard the exception of prescription and that the trial judge should have believed that claimant was working in ever increasing pain and left his employment because he became too disabled to continue. Claimant's seventh assignment complains that the trial court should have assessed penalties and attorney fees against defendants.
At the outset, we note that one district judge is not bound by the rulings of another any more than this court is bound by a ruling of the appeals court of another circuit. See Godwin v. Government Emp. Ins. Co., 394 So.2d 751 (La.App. 3d Cir. 1981). Secondly, the judge who heard the exceptions was most equivocal in his reasons for overruling the exception of prescription, saying
"when viewed in the most favorable manner, [claimant's evidence] support[s] his contentions.
"For the purpose of this exception, the court finds ... that the injury may have legally manifested or developed [itself]... within one year of the filing of this suit ..." (Emphasis added)
The judge at the trial on the merits saw and heard claimant testify and was not required to view claimant's evidence in the "most favorable manner," but fairly in the light of all evidence in the performance of his responsibility to weigh and assess the evidence.
Similarly, in our appellate review of the facts and the law, we are to decide whether the record supports the conclusions and the result pronounced by the trial court. We give great weight to the trial judge's weighing and assessing of testimony which he has heard, but much lesser weight to his assessment of evidence which is in documentary or deposition form. LSA-Const. Art. 5, § 10(B). See Fabiano v. Bryan, 438 So.2d 719 (La.App. 2d Cir. 1983). In the latter instance, we do not review the evidence most favorably toward the litigant who prevails in the trial court, but we review the evidence independently and fairly. See and compare Boyette v. Auger Timber Co., 403 So.2d 800 (La.App. 2d Cir.1981); Lowe v. Continental Ins. Co., 437 So.2d 925 (La.App. 2d Cir.1983).
In this appeal we have recognized the trial court's prerogative of assessing the credibility of witnesses who testified before him, but have reviewed the other evidence without recognition of such a prerogative. We find that the record supports the trial court's conclusions that this claimant was not working in ever increasing pain to the extent that he became disabled within the meaning of the law and that claimant left his employment because he did not want to work with the new body shop employee hired by the new owner of the dealership.
We do find, however, that the evidence clearly shows that claimant sustained the impairment of a physical function under LRS 23:1221(4)(p) which was revealed to him and to his employer by the orthopedist's report dated August 21, 1980, within the year before suit was filed. Claimant was assigned a 15 percent permanent impairment [called disability by the orthopedist] of the body as a whole as a *1371 result of the myoligamentous strain of his back while at work. The orthopedist agreed that claimant was not totally and permanently disabled. This evidence is not contradicted, although it is shown that claimant's back could have been somewhat impaired or "disabled" because of other and earlier exertions and age.
The employer and its insurer apparently anticipated the application of § 1221(4)(p) because the insurer deposited $10,000 for the benefit of claimant into the registry of the trial court on the day before trial for the purpose of avoiding penalties and attorney fees and legal interest. The order allowing the deposit provides unconditionally that claimant
"may withdraw all or any portion of said deposit at any time, without any prejudice to his rights in this lawsuit, by written [request] to the Clerk.... In the event of any such withdrawal, the Clerk shall secure a written receipt from Plaintiff for the monies thus withdrawn ... and shall forward a copy of such receipt to counsel for Defendants ..."
An appellate court should allow compensation for a proved non-disabling § 1221(4)(p) impairment even though this was not sought or passed upon in the trial court. Ventress v. Danel-Ryder, Inc., 225 So.2d 765 (La.App. 3d Cir.1969). See also Chipman v. Insurance Co. of North America, 389 So.2d 432 (La.App. 2d Cir. 1980). Any amount between the statutory minimum and maximum may be awarded for the 100 week period in the light of the circumstances of each case. LRS 23:1202. See Campbell v. Baker, Culpepper & Brunson, 382 So.2d 1046 (La.App. 2d Cir. 1980).
In Campbell, supra, a younger claimant sustained a back injury in an automobile accident and was treated conservatively for about 11 months before undergoing surgery, a lumbar laminectomy, which left her with a 10-15 percent permanent residual "disability" or impairment of her body. We approved an award under § 1221(4)(p) of $50 per week. The claimant in this appeal is older, was considering retirement, and has a slightly greater percentage impairment, is engaged in manualtype labor and did not undergo surgery. We deem $60 per week to be a reasonable award under the statutes mentioned.
We assessed attorney fees in Campbell because that employer made no attempt to pay that claimant's medical expenses and had no sound basis in law or in fact to deny claimant's temporary total disability and resulting impairment. Here, it was stipulated that defendants were not obligated for penalties and attorney fees prior to October 1, 1981. Here defendants paid wages in lieu of compensation and paid the medical bills. We cannot say that these defendants were without a sound basis in law or in fact to contest claimant's action by the plea of one year prescription. Whether or not the judge who held the hearing on the plea was correct in his ruling is not before us and, in any event, plaintiff filed suit within one year from the date his orthopedist informed him and his employer that he had a 15 percent permanent "disability." Defendants were not without a sound basis in law or in fact for disputing total and permanent disability and refusing to pay benefits for such disability. Defendants unconditionally deposited and put at claimant's disposition funds which would have paid claimant more than the minimum § 1221(4)(p) benefit. Under these circumstances, we do not find defendants arbitrary and capricious and liable for penalties and attorney fees. Compare Graham v. Jones Brothers Co., Inc., (La.App. 2d Cir.1984).
At appellant's cost here and below, we amend and recast the judgment to reject all demands of claimant except for § 1221(4)(p) benefits of $60 per week for 100 weeks from May 30, 1980, which benefits are hereby awarded with legal interest from date of judicial demand on each weekly amount until May 9, 1983, (the date of the deposit into the registry of the court), and subject to a credit of $250 for the two weeks claimant was paid his weekly guarantee in lieu of compensation by his employer.
AMENDED AND AFFIRMED.