647 So.2d 1207 (1994)
Larry D. BAMBERG, Plaintiff-Appellant,
v.
CITY OF SHREVEPORT, Defendant-Appellee.
No. 26,278-CA.
Court of Appeal of Louisiana, Second Circuit.
December 7, 1994.
Rehearing Denied January 19, 1995.
*1209 James D. Caldwell, Shreveport, for appellant.
Jerald N. Jones, City Atty. for City of Shreveport, Lawrence K. McCollum, Asst. City Atty., Shreveport, for appellee.
Before NORRIS, HIGHTOWER and VICTORY, JJ.
VICTORY, Judge.
Larry D. Bamberg, plaintiff in this worker's compensation action, appeals a judgment rejecting his claims for benefits, medical expenses, penalties and attorney fees arising from a back injury sustained during the course and scope of his employment with the defendant, the City of Shreveport. We affirm in part, reverse in part and render.

FACTS
The parties stipulated to the following facts. On January 15, 1982, Larry D. Bamberg, a Shreveport City Police Officer, injured his lower back after he slipped and fell on ice while exiting his patrol car to write a report. As a result of the accident, Bamberg underwent surgery which left him with 20 percent disability of his back. Bamberg was off work from January 15, 1982, through July 15, 1982. At the time of the accident he was earning $1,800.00 per month. Bamberg was paid at his full wage rate for the entire time period that he was off work. On July 16, 1982, Bamberg returned to light duty, and then on September 20, 1982, to full duty. He continued to work full-time until his retirement on July 14, 1986.
On January 11, 1983, Bamberg filed suit against the City of Shreveport (the "City"), seeking worker's compensation benefits. He claimed entitlement to temporary total disability benefits in the amount of $183.00 per week, for the 26 week period that he was off work. LSA-R.S. 23:1221(1). He also claimed to be totally and permanently disabled, and requested worker's compensation benefits on this basis. LSA-R.S. 23:1221(2). Alternatively, Bamberg claimed that he was entitled to compensation for permanent loss of a physical function. LSA-R.S. 23:1221(4)(p). Finally, Bamberg sought the payment of medical bills, penalties and attorney fees.
*1210 The City denied each of Bamberg's claims. With regard to the claim for temporary total disability benefits, the City contended that Bamberg received full pay during the 26 weeks that he was off work, and that he was not entitled to "double recovery." According to the City, Bamberg was paid at his full wage rate pursuant to LSA-R.S. 33:2214(B), which provides police officers with up to 52 weeks of fully paid sick leave, subject to a credit for worker's compensation benefits paid.
The trial court found in favor of the City on all claims. The court denied temporary total disability benefits on the basis that the City was entitled to a worker's compensation credit against the full wages collected by Bamberg under LSA-R.S. 33:2214(B). The court also found that the evidence failed to establish that Bamberg continued to experience substantial pain following his return to work, and that he was not entitled to an award for permanent and total disability benefits. The trial court opinion did not discuss or rule upon Bamberg's alternative claim for compensation for permanent loss of a physical function, under LSA-R.S. 23:1221(4)(p). The trial court denied Bamberg's claims for payment of certain medical expenses, and concluded that its rulings on the previous issues rendered the questions of penalties and attorney fees moot.
Bamberg appeals, claiming that the trial court erred in: (1) denying temporary total disability benefits; (2) finding that he did not return to work in substantial pain and was not entitled to permanent and total disability benefits; (3) failing to award him benefits for permanent impairment of a bodily function; (4) finding that the City was not liable for certain medical expenses; and (5) finding that the City was not liable for penalties and attorney fees.

DISCUSSION

TEMPORARY TOTAL DISABILITY BENEFITS
As noted earlier, during the time that Bamberg was off work, he was paid at his full wage rate pursuant to LSA-R.S. 33:2214(B). At the time of Bamberg's accident, this statute provided:
B. Each employee of the police departments of the municipalities covered by this Subpart, except the city of Westwego, shall be entitled to and given with full pay a sick leave aggregating not less than fifty-two weeks during any calendar year when the conditions actually warrant. Any police department employee who draws such full pay during sick leave shall have such pay decreased by the amount of worker's compensation benefits actually received by such employee. (Emphasis added.)
Relying upon the second sentence of this provision, the City contends that Bamberg is not entitled to temporary total disability benefits since the sick leave pay that he received shall be decreased by the amount of worker's compensation benefits paid. In other words, the City claims that in order to prevent Bamberg from receiving "double recovery" it must be allowed to credit any temporary total disability benefits owed against the full sick leave benefits already paid. We agree.
As authority for his position, Bamberg relies upon certain jurisprudence which interprets LSA-R.S. 23:1206, an analogous, though distinguishable provision. At the time of Bamberg's injury, LSA-R.S. 23:1206 provided:
Any voluntary payments made by the employer or his insurer either in money or otherwise, to the injured employee or his dependents, and accepted by the employee, which, by the terms of this act, were not due and payable when made, may, subject to the approval of the court, be deducted from the payments to be made as compensation; provided, that in case of disability, such deduction shall be made by shortening the period during which compensation shall be paid, and not by reducing the amount of the periodical payments. (Emphasis added.)
In most situations, Louisiana courts have traditionally found that sick leave payments are benefits which the employee has already earned by virtue of his employment or past services rendered to his employer. Kaupp v. City of New Orleans, 248 So.2d 99 (La.App. 4th Cir.1971); Guerrera v. City of New Orleans, *1211 212 So.2d 223 (La.App. 4th Cir.1968); Hammond v. Sewerage & Water Board of New Orleans, 204 So.2d 699 (La.App. 4th Cir.1967); France v. City of New Orleans, 92 So.2d 473 (La.App.Orl.1957). Thus, in such situations an employer may receive credit for sick leave payments only if the elements of LSA-R.S. 23:1206 are satisfied and the employer shows that the payments were made and received as compensation. Young v. Western Electric Company, Inc., 486 So.2d 962 (La.App. 1st Cir.1986); Naquin v. Texaco, Inc., 423 So.2d 31 (La.App. 1st Cir.1982); Caston v. Combined Insurance Company of America, 308 So.2d 287 (La.App. 1st Cir. 1975). Furthermore, in such cases for an employer to receive a credit against worker's compensation payments, the employer must show the amounts were paid as compensation and not as an insurance type payment for which the employee has been paying premiums during his employment. Young, supra; Naquin, supra.
After thoroughly reviewing LSA-R.S. 23:1206 and the jurisprudence cited above, we conclude that the trial court correctly found this case to be distinguishable. LSA-R.S. 23:1206 is simply not applicable here. It gives the employer credit only for voluntary payments which were not due and payable when they were made. The sick leave payments tendered to Bamberg do not meet these criteria since they are statutorily mandated, making them due and payable and involuntarily made.
Furthermore, the reasoning applied in the majority of the cases cited above does not apply because they did not involve statutorily created sick leave plans. Rather, the sick leave plans at issue were contractual in nature as they were bargained for and agreed to by both the employer and the employee. Under these non-statutory negotiated and bargained for agreements, employees either earned their sick leave benefits through past services or by virtue of mere employment with their employers. Therefore, the courts held that before the employer is entitled to a credit under LSA-R.S. 23:1206, it must prove that sick leave payments (or portions thereof) were made and received as worker's compensation.
In contrast, LSA-R.S. 33:2214(B) sick leave benefits were created and mandated by the Louisiana legislature. Since the legislature created these sick leave benefits, they are subject to its regulation. It is clear from the second sentence of LSA-R.S. 33:2214(B) that the legislature specifically intended to prevent employees from receiving "double recovery" by collecting full sick leave benefits and worker's compensation benefits for the same time period. This is reflected not only by the mere fact that the statute provides for the credit, but also by the fact that the legislature made the credit mandatory, not discretionary.
To receive the LSA-R.S. 33:2214(B) worker's compensation credit against sick leave pay, the City is not required to meet the same burden of proof required for a worker's compensation credit under LSA-R.S. 23:1206. Rather, the City is only required to show that: (1) Bamberg received full sick leave benefits during the time that he was off work; and (2) the amount of worker's compensation benefits actually received by Bamberg.
As noted previously, the parties stipulated that Bamberg was paid at his full wage rate for the entire time period that he was off work. Also, the City, a self insured entity, presented the testimony of Georgette Thomas, an employee who worked with the City's Risk Management Office. She stated that Bamberg received full pay during the time that he was off work. Thomas explained that the benefits paid during this time were made up of two components, namely, temporary total disability benefits under worker's compensation law, with the balance of full pay being sick leave benefits.
We agree with the trial court that the City presented sufficient evidence to entitle it to the statutory credit provided for in LSA-R.S. 33:2214(B). Bamberg received full pay during the 26 weeks that he was off work, of which $183.00 per week was temporary total disability benefits under the compensation statute, with the balance of full pay being sick leave benefits. Thus, Bamberg was fully compensated while off work, and the trial court correctly concluded that requiring the City to again pay temporary total disability *1212 benefits would unfairly subject it to double liability.

PERMANENT AND TOTAL DISABILITY BENEFITS
Bamberg also contends that the trial court erred in finding that he did not return to work in substantial pain and was not entitled to permanent and total disability benefits under LSA-R.S. 23:1221(2).
Both parties admit that since the accident occurred in 1982, this case is governed by the Worker's Compensation Act as it existed prior to the 1983 revisions. Under the pre-1983 version of LSA-R.S. 23:1221(2), an employee is considered permanently and totally disabled if he is unable to pursue any gainful employment without experiencing substantial pain or if due to his disability, the employee constitutes a source of danger either to himself or to a fellow employee. Schriner v. Riverside Companies, Inc., 378 So.2d 1035 (La.App. 2d Cir.1979), writ denied, 380 So.2d 1368 (La.1980); Bourgeois v. Fireman's Insurance Company of Newark, New Jersey, 316 So.2d 3 (La.App. 1st Cir. 1975). Whether a workmen's compensation claimant is suffering pain substantial enough to be disabling is a question of fact to be decided by the trial court on the basis of the preponderance of the medical and lay evidence. Lemoine v. Employers Casualty Company, 378 So.2d 594 (La.App. 3d Cir. 1979), writ denied, 380 So.2d 101 (La.1980).
The testimony and other evidence presented at trial indicate that Bamberg received the following medical treatment. On January 18, 1982, Bamberg consulted Dr. A.E. Dean, Jr., an orthopedist. Upon examining and X-raying Bamberg's lower back, Dr. Dean concluded that he suffered an acute lumbar sprain with accompanying muscle spasms, and that he had a possible defect of the L-4 vertebrae. Bamberg was admitted to Schumpert Medical Center for conservative treatment, including physical therapy and traction. Despite such treatment, Bamberg continued to experience pain. On February 2, 1982, Bamberg underwent surgical laminectomy of the L-4 and L-5 vertebrae and fusion of the L-4 vertebrae. Bamberg was released from the hospital on February 10, 1982.
Dr. Dean rendered follow-up treatment after the surgery. Dr. Dean saw Bamberg on March 3, 1982 and April 7, 1982, and he appeared to be recuperating well although he complained of some back pain. Dr. Dean recommended that Bamberg continue exercising and wearing his back brace, and noted that Bamberg would be unable to return to work as long as the back brace was necessary. During his June 2, 1982 visit, Dr. Dean concluded that Bamberg could probably return to work in four to six weeks. On July 16, 1982, Dr. Dean released Bamberg to return to work on light duty.
At his final two visits with Dr. Dean, on September 15, 1982 and December 15, 1982, Bamberg reported some back and leg pain, and numbness in his right leg. Dr. Dean noted that there was only slight limitation of motion in the lumbar area. He assigned Bamberg a 20 percent disability of the back, and released him from further treatment.
On January 6, 1983, Bamberg consulted Dr. Christopher D. Burda, a rheumatologist, complaining of numbness in his lower right leg after standing for more than 10 to 15 minutes. After examining Bamberg, Dr. Burda concluded that he may have some residual sensory nerve root problems, and that it is possible that he may have a recurrent or herniated disc in the lumbar area. Dr. Burda referred Bamberg to Dr. Warren D. Long, Jr., a neurosurgeon, for further treatment.
Bamberg consulted with Dr. Long on January 25, 1983. Dr. Long concluded that Bamberg had an unstable back and stenosis from central disc syndrome at the L-4 and L-5 vertebrae. He recommended more diagnostic testing, and if pain persisted, posterior lumbar fusion.
On January 20, 1988, approximately five years later, Bamberg again consulted with Dr. Burda. He complained of back pain and stiffness, and numbness after prolonged sitting or standing. Bamberg reported that this condition has persisted since 1983. After examining Bamberg, Dr. Burda concluded that he had some residual sensory loss as *1213 a result of the lumbar fusion, and assigned a permanent partial disability rating of 20 percent.
In January 1988, Bamberg also sought evaluation from Douglas A. Tietjen, a physical therapist, who concluded that Bamberg would benefit from back rehabilitation. Tietjen recommended a three- to six-month therapy program.
Bamberg testified that he was still experiencing back pain when he returned to work on July 16, 1982, and at the time of trial. He stated that sometimes the pain was more extreme than others depending upon the nature of his activity. According to Bamberg, after riding in his patrol car for long periods of time he was forced to get out and move around to alleviate numbness in his leg. He also recalled having lower back pain when directing traffic.
Bamberg also testified that he worked for four years following the accident, originally as a patrol officer and then in the records and communications departments. During that time he progressed in rank from sergeant to lieutenant to captain. He ultimately retired in July 1986. Bamberg also admitted that he did not seek any medical treatment for his lower back between January 1983 and January 1988.
The trial court denied Bamberg's claim, finding that the evidence failed to establish that following his return to work he continued to experience pain at a level necessary to support an award of total and permanent disability benefits. We affirm the trial court's conclusions, finding them to be amply supported by the evidence and well within the court's discretion.

PERMANENT IMPAIRMENT OF BODILY FUNCTION
While Bamberg has not proven that he is totally and permanently disabled, the evidence shows that he has sustained serious and permanent impairment of a physical function under LSA-R.S. 23:1221(4)(p) and that the trial court erred in denying these benefits.[1]
The version of LSA-R.S. 23:1221(4)(p) in effect at the time of Bamberg's injury provided, in pertinent part:
In cases not falling within any of the provisions already made, ... where the usefulness of a physical function is seriously permanently impaired, the court may allow such compensation as is reasonable and in proportion to the compensation hereinabove specifically provided in the cases of specific disability, not to exceed sixty-six and two-thirds per centum of wages during one hundred weeks.
Awards for permanent impairment of a bodily function are limited to 100 weeks in an amount not exceeding 66 2/3 percent of the employee's wages, subject to the maximum and minimum weekly compensation rate provided in LSA-R.S. 23:1202. Depending upon the circumstances of the case, any amount between the statutory minimum and maximum may be awarded at the discretion of the trial court. Woodard v. George Cole Chevrolet, Inc., 444 So.2d 1367 (La.App. 2d Cir.1984); Campbell v. Baker, Culpepper & Brunson, 382 So.2d 1046 (La.App. 2d Cir. 1980), writ denied, 385 So.2d 793 (La.1980). However, an award for the loss or impairment of a bodily function under LSA-R.S. 23:1221(4)(p) is subject to a credit for any compensation paid pursuant to LSA-R.S. 23:1221(1), (2) and (3). LSA-R.S. 23:1223; Wright v. Red Ball Motor Freight, Inc., 315 So.2d 344 (La.App. 1st Cir.1975). Further, the credit is on a dollar-for-dollar basis, not a week-for-week basis. Hammond, 204 So.2d at 702.
In Campbell, supra, this court approved an award under LSA-R.S. 23:1221(4)(p) of $50.00 per week to a plaintiff who was treated *1214 conservatively for 11 months before undergoing a lumbar laminectomy which left her with 10 to 15 percent residual disability or impairment. In Woodard, supra, this court awarded $60.00 per week to a plaintiff who sustained a nonsurgical myoligamentous back strain which left him with 15 percent residual disability or impairment.
The parties stipulated that Bamberg has a 20 percent disability of the back as Drs. Dean and Burda concluded. Additionally, Bamberg testified that even after five years after the accident and accompanying laminectomy, he experienced intermittent back pain and leg numbness after sitting or standing for long periods of time. Under these circumstances, we find that the undisputed evidence proves that Bamberg suffered serious and permanent impairment of his back.
We deem $83.08 per week[2] for 100 weeks to be a reasonable award under the statutes discussed. Of course, under LSA-R.S. 23:1223, this award is subject to a $4,758.00 ($183.00 × 26 weeks) dollar-for-dollar credit for temporary total disability benefits previously paid by the City during the 26 weeks that Bamberg was off work.

MEDICAL EXPENSES
Bamberg also claims that the trial court erred in failing to require the City to pay the following medical expenses: (1) $300.00 for treatment rendered by Dr. Burda on January 20, 1988; and (2) $158.00 for treatment rendered by Tietjen Physical Therapy in January 1988.
LSA-R.S. 23:1203 requires the employer to pay all "necessary" medical expenses. Dr. Burda's medical records from the January 20, 1988 visit indicate that Bamberg was again seeking treatment for the back injury sustained in 1983. Likewise, the medical records from Tietjen Physical Therapy also reveal that Bamberg was requesting professional advice regarding rehabilitation of his back. Clearly these expenses were incurred as a result of the original injury, and the trial court erred in denying Bamberg's claims therefor.

ATTORNEY FEES AND PENALTIES
Bamberg also claimed that the City should be ordered to pay penalties and attorney fees because its refusal to pay benefits was arbitrary and capricious or without probable cause. LSA-R.S. 23:1201.2.
This section is penal in nature and must be strictly construed. The issue of whether refusal to pay compensation benefits was arbitrary and capricious or without probable cause is a factual determination which must be determined upon the merits of each case. Smith v. Borden, Inc., 413 So.2d 701 (La.App. 4th Cir.1982), writ denied, 420 So.2d 171 (La.1982). It is well settled that penalties and attorney fees are not to be assessed unless the employer's defenses are without a sound basis in fact or in law. Campbell, 382 So.2d at 1049.
Correctly relying on LSA-R.S. 33:2214(B), the City believed that it had already complied with its legal obligation to pay temporary total disability benefits to Bamberg. Likewise, the City should not be subjected to penalties for failure to pay benefits for permanent impairment of a bodily function. These benefits are not mandatory, but may be awarded after the employee proves that he has sustained an injury which seriously and permanently impairs a bodily function. Finally, the City should not be subjected to penalties for failure to pay the $458.00 in medical expenses. Bamberg admitted at trial that he did not send the invoices to the City for payment and never personally notified the City that these medical expenses were unpaid. We find that the trial court properly concluded that the City should not be required to pay penalties and attorney fees.

DECREE
For the reasons stated, we affirm that portion of the trial court judgment in favor of the City of Shreveport rejecting Larry D. Bamberg's claims for: (1) further temporary total disability worker's compensation benefits; (2) total permanent disability worker's *1215 compensation benefits; and (3) penalties and attorney fees.
We reverse the trial court judgment to award Bamberg benefits for serious and permanent impairment of a bodily function, in the amount of $83.08 per week for 100 weeks, subject to a $4,758.00 credit for the 26 weeks Bamberg was paid temporary total disability benefits by the City, or net benefits of $3,550.00, together with legal interest from judicial demand until paid. We further reverse that portion of the trial court judgment denying Bamberg's claims for medical expenses, and render judgment against the City in favor of Bamberg for $458.00, for medical expenses incurred.
AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.
NORRIS, J., concurs in the result.

APPLICATION FOR REHEARING
Before NORRIS, LINDSAY, HIGHTOWER and BROWN, JJ., and PRICE, J., Pro Tem.
Rehearing denied.
NOTES
[1] As previously noted, neither the trial court's written opinion nor the judgment discussed or ruled upon Bamberg's claim for benefits under LSA-R.S. 23:1221(4)(p). However, Louisiana jurisprudence holds that where a judgment is silent with respect to any demand which was an issue in the case under the pleadings, the silence constitutes an absolute rejection of the demand. Sun Finance Co., Inc. v. Jackson, 525 So.2d 532 (La.1988); Johns v. American Isuzu Motors, Inc., 622 So.2d 1208 (La.App. 2d Cir.1993); Anthony's Auto Sales, Inc. v. Shepard, 600 So.2d 125 (La.App. 2d Cir.1992); Potvin v. Wrights's Sound Gallery, Inc., 568 So.2d 623 (La.App. 2d Cir. 1990).
[2] This figure was derived by multiplying Bamberg's average weekly wage of $415.38 [($1800.00 per month × 12 months) ÷ 52 weeks], by 20 percent.