391 So.2d 873 (1980)
Mrs. Margaret RIVERS et al.
v.
MACCO, a division of Schlumberger Technology Corp. et al.
No. 11637.
Court of Appeal of Louisiana, Fourth Circuit.
November 12, 1980.
*874 Alvin G. Baham, Gretna, for plaintiffs-appellees.
Law Offices of James J. Morse, Michael F. Grennan, New Orleans, for defendants-appellants.
Before BOUTALL, SCHOTT and SARTAIN, JJ.
*875 SARTAIN, Judge.
The defendant-employer and its insurer appeal from a judgment of the district court which awarded workmen's compensation death benefits to the surviving widow and minor son of Willie Rivers. We clarify the award as to death benefits, amend the same as to funeral benefits, and affirm.
The two issues presented are: (1) causal relation between decedent's death and his employment, and (2) the scope of the award.
The deceased, Willie Rivers, had been employed by Macco for a number of years as a sales and service representative, but had been made shop foreman a few months prior to his death. On February 17, 1978 he arranged with his supervisor to deliver a load of mandurals to Macco's Houston plant.
On the morning of February 17, 1978 the deceased, with the help of fellow workers, loaded a Macco trailer with the mandurals and went home to pick up his wife who was to accompany him to Houston. He told her he had felt some discomfort when loading the trailer, but insisted that he felt well enough to go to Houston. Once there he unhitched the trailer and pushed it up over a curb until he could deliver it the following day. He was unable to eat dinner and later that night or early the next morning he began experiencing extreme chest pains and vomited. He eventually agreed to go to the hospital and the following day after tests in the emergency room he went into fibrillation. He was admitted to the ICU with the diagnosis of myocardial infarction. He was recovering well when he was found dead in his hospital bed on March 5, 1978. The cause of death was cardiac arrest.
The trial judge found that the death was the result of an initial myocardial infarction brought about by strenuous activity performed by Mr. Rivers on February 17, 1978, while in the course of his employment. Specifically, he found that the process of the myocardial infarction actually began with the loading of the valves, that the symptoms persisted during the trip to Houston, and that the process was aggravated by pushing the trailer over the curb.
A heart attack or similar cardiovascular occurrence is an "accident" within the meaning of the definitions in R.S. 23:1021 (1), (6). If the "accident" occurs in the course of one's routine and normal duties the act applies upon the showing of a causal relation between the employee's injuries (death) and his employment. Roussel v. Colonial Sugars Company, 318 So.2d 37 (La.1975). The plaintiff must establish this causal connection by a preponderance of the evidence. The testimony as a whole must show that more probably than not an employment "accident" occurred and that it had a causal connection to the disability (death). Prim v. City of Shreveport, 297 So.2d 421 (La.1974).
The determination of a causal relationship between a worker's employment and death is a question of fact for the trial judge. On appellate review this factual finding should not be disturbed when there is evidence before the court which, upon its evaluation of credibility, furnishes a reasonable factual basis for the trial court's findings unless those findings are clearly wrong. Crump v. Hartford Accident and Indemnity Company, 367 So.2d 300 (La. 1979).
In the instant case this court cannot conclude that the trial judge was clearly wrong in his determination of a causal relationship between Mr. Rivers' employment and his death. Indeed, a careful review of the record reveals ample evidence to sustain the trial judge.
Initially, there is an abundance of essentially unconflicting medical evidence establishing a causal relationship between the activities performed by Mr. Rivers on February 17, 1978 and the subsequent heart attack and death. Dr. C. H. Heider, the doctor who treated Mr. Rivers when he was admitted to the hospital and supervised his treatment during the two weeks following admission, felt that the onset of the acute symptoms of myocardial infarction was related to Mr. Rivers' activities of the previous *876 day. He based that opinion on the autopsy record, information he obtained from Mr. Rivers concerning previous pain upon physical exertion, and information he had received from Mrs. Rivers.
Dr. Sidney Jacobs, a specialist in internal medicine with a sub-speciality in pulmonary diseases, concurred in Dr. Heider's conclusion. He was further of the opinion that most heart attacks can be traced to just such a cause once a detailed history can be obtained.
The only contrary evidence does not detract from either Dr. Heider's or Dr. Jacob's testimony. Dr. John Phillips, an expert in cardiology who examined the record, felt that based on the hospital record alone the infarction was not related to activity. However, Dr. Phillips modified his opinion when asked about the effect of activities similar to those engaged in by Mr. Rivers the day prior to the heart attack. He felt, based on this additional information, that he would lean toward the conclusion that the attack was related to the previous physical activity. Thus, the record contains ample support for the trial judge's conclusion of causation.
Further, the fact that this conclusion was ultimately based on Mrs. Rivers' testimony does not detract from its validity. In workmen's compensation cases the ordinary rules of evidence are relaxed and courts are not bound by rules of evidence or technical procedures. R.S. 23:1317. In view of said statutory provisions hearsay testimony is admissible in a suit for workmen's compensation benefits within discretionary limits. Montgomery v. Delta Concrete Products, 290 So.2d 769 (La.App. 1st Cir. 1974).
Here the defendant strenuously objects to Mrs. Rivers' testimony because it contains the uncorroborated statements of Mr. Rivers concerning his physical activities and symptoms and is further contradictory in her own recollection of events. Defendant contends that the admission of this testimony exceeds the discretionary limits of trial court. After a thorough review of the record we cannot agree. The discrepancies and inconsistencies upon which defendant relies do not bear on the substance of Mrs. Rivers' testimony or the conclusion which can be drawn from the record as a whole.
The medical history compiled by Dr. Heider contains reference to Mr. Rivers' comment that he had been experiencing pain upon exertion in the few months preceding his death. Dr. Jacobs noted that a myocardial infarction, particularly in cases where the patient had experienced pain upon exertion previously, rarely occurs without some precipitating event. Thus, Mrs. Rivers' testimony about her husband's distress when loading the truck is consistent with other evidence presented. Further, the record reflects that Mr. Rivers was a strong man in apparent good physical health. The fact that none of his coworkers observed anything unusual does not detract from Mrs. Rivers' testimony.
The trial judge is given great discretion in matters of credibility. In the instant case the trial judge obviously believed Mrs. Rivers' testimony was accurate and truthful. Based on the support we find in the record and considering the great discretion allowed the trial judge in credibility determinations, we find no error in the admission of or reliance upon Mrs. Rivers' testimony.
Before reaching the award it is necessary that we dispose of the contention of the defendants that plaintiff has failed to prove the amount of decedent's weekly wages. The judgment reflects the same to be $334.14. The record is not specific on the amount of decedent's weekly wage as of the date of his death (March 5, 1978). There is in the record a copy of decedent's W-2 Form for 1977 which reflects that his annual income from the defendant was $18,163.34. It is apparent from the testimony that during the course of the trial a dispute arose over the relevancy of his earnings for 1977. There is testimony in the record that decedent's earnings in 1978 were generally the same as 1977. While the specific weekly earnings are not shown there is a statement by the defendants in their pretrial brief that they would stipulate *877 to the fact that decedent's average weekly earnings at the time of his death were $334.14. In order to eliminate the necessity of and the delays occasioned by a remand we find no error on the part of the trial judge in accepting the figure of $334.14.
Appellants object to the wording of the judgment insofar as the same awarded, without limitation, Mrs. Rivers and her son total compensation benefits of 46.25% of $334.14. While 46.25% of a deceased worker's weekly wages is the scheduled benefit for a surviving widow and one child under R.S. 23:1233, this benefit is subject to the maximum limitation provided for in R.S. 23:1202. Henderson v. Travelers Ins. Co., 354 So.2d 1031, 1032 (footnote 1) (La.1978); Stubbs v. Parish of East Baton Rouge, 343 So.2d 258 (La.App. 1st Cir. 1977); 25 Loy.L. Rev. 341, 358 (1979). For a compensible disability or death occurring after September 1, 1977 the maximum rate is determined by Louisiana Department of Labor, Employment Security Division. The maximum weekly benefit on the date of decedent's death in the instant action (March 5, 1978) was $130.00. The judgment as presently worded provides benefits in excess of the maximum limitation.[1] The judgment should be amended accordingly.
Appellants also object to the wording of the judgment which condemned them to pay for "all costs and all funeral, burial and hospital expenses." This provision in the judgment should also be amended to reflect the $1,500.00 limitation for funeral expenses provided for in R.S. 23:1210.
With respect to the hospital expenses, it is noted that the defendant-employer provided his employees with additional hospital insurance with another insurer and without contribution on the part of said employees. 80% of the medical expenses incurred on behalf of Mr. Rivers was paid by that insurer and Mrs. Rivers paid the remaining 20%. Appellants argue that they should only be answerable to Mrs. Rivers for the 20% of these expenses paid by her. We disagree. There is no evidence in the record that the funds derived from the hospital policy was the property of the employer so as to entitle the employer and/or its worker's compensation insurer to any credit. It is more reasonable to assume that the hospital policy was of the standard type naming the employee or his widow as the beneficiary. Under these circumstances we fail to see how the employer's second insurer (workmen's compensation) can claim any credit, particularly in the absence of any type of coinsurance provision in its policy or any showing that the hospital insurer is entitled to subrogation for the sums it paid to Mrs. Rivers.
Lastly, appellants contend that the expert witness fees and deposition costs are excessive. On the record before us we cannot conclude that the witness fees therein provided are excessive. As to the deposition costs, appellants may still contest the same in the trial court on a rule to fix costs.
For these reasons the judgment of the trial court is amended to limit the amount of weekly compensation benefits to Mrs. Rivers and her minor son and funeral expenses in accordance with the provisions of R.S. 23:1202 and 1210, respectively. The judgment as amended is affirmed at appellants' costs.
AMENDED AND AFFIRMED.
NOTES
[1] $334.14 × 46.25% = $154.54.