486 So.2d 962 (1986)
Hollis W. YOUNG
v.
WESTERN ELECTRIC CO., INC.
No. CA 85 0067.
Court of Appeal of Louisiana, First Circuit.
March 25, 1986.
*963 John W. DeGravelles, Baton Rouge, for plaintiff-appellee Hollis W. Young.
Maxwell G. Kees, Baton Rouge, Timothy L. McCune, New Orleans, for defendant-appellant AT & T Technologies, Inc. (formerly Western Elec.).
Before LOTTINGER, COLE and CRAIN, JJ.
COLE, Judge.
The primary issues presented in this worker's compensation case are: 1) whether plaintiff's permanent, partial disability was related to a job accident which occurred on January 28, 1980; 2) whether defendant was entitled to a credit against worker's compensation for payments made under its sickness and accident disability benefits plan; 3) whether the court failed to consider plaintiff's earned income in setting compensation; 4) whether plaintiff is entitled to an award for medical expenses; 5) whether plaintiff's rate of compensation should be based on the rates in effect on the date of his initial injury or the date his permanent disability began; and, 6) whether defendant's refusal to make compensation payments to plaintiff was arbitrary and capricious.

FACTUAL BACKGROUND
On January 28, 1980 plaintiff, Hollis W. Young, sustained a job related injury to his lower back while employed by defendant, Western Electric Company. Plaintiff was referred by the company physician to Dr. Daniel Sinclair, an orthopedic surgeon. On his initial visit to Dr. Sinclair on February 1, 1980, plaintiff was diagnosed as suffering from a severe lumbosacral strain and was prescribed medication and physical therapy. Plaintiff was paid benefits by defendant equal to his full salary from Western Electric's sickness and accident disability benefit plan until his return to work on March 24, 1980. On that date he was released to return to light duty with restrictions as to climbing, lifting, bending or prolonged sitting. Plaintiff's position as an installer normally required such activities. Plaintiff was released to return to full duty on June 9, 1980. At that time Dr. Sinclair felt plaintiff probably would not suffer any permanent physical impairment.
Plaintiff testified he continued to suffer intermittent low back pain after he returned to work. He stated he attempted to see his doctor on several occasions, but was never able to be fit into the doctor's schedule.
On December 9, 1980, while bending over to put on his shoes, plaintiff suddenly began experiencing severe pain in his lower back. The following day he saw Dr. Sinclair, who stated plaintiff's condition was then worse than it had been on his initial visit in February. Plaintiff was hospitalized in January of 1981 in order to undergo a lumbar myelogram, after which he was diagnosed as suffering from a bulging intervertebral disc at the L-3 and L-4 level.
On March 11, 1981, plaintiff was released to return to work on light duty, again with *964 restrictions as to climbing, heavy lifting or pulling. Plaintiff was last seen by Dr. Sinclair for his back condition in April of 1981. At that time Dr. Sinclair felt plaintiff should permanently restrict any work activities requiring much bending, climbing or lifting.
Plaintiff testified his condition continued to worsen thereafter. As a result, he consulted a second orthopedic surgeon, who referred him to Dr. Anthony Ioppolo, a neurosurgeon. Dr. Ioppolo hospitalized plaintiff for five days in November 1981 for traction.
Plaintiff was no longer able to work after December of 1981. On January 4, 1982 he was readmitted to the hospital for a second myelogram, which demonstrated the presence of a L-4 disc rupture. A lumbar disc excision was performed on January 28, 1982. However, plaintiff continued to experience problems with his back and was rehospitalized in April for conservative therapy. In July a new myelogram showed the presence of a recurrent disc herniation. Plaintiff underwent a second operation for the removal of a ruptured disc fragment in September of 1982.
Plaintiff's recovery from this operation has been good, but he was still under Dr. Ioppolo's care at the time of trial in June of 1984. According to Dr. Ioppolo plaintiff has suffered an anatomical disability of thirty to forty percent. In addition, he has a functional disability prohibiting him from doing any type of heavy labor, lifting, climbing or stooping.
Plaintiff last worked for defendant in December 1981. On January 5, 1983 he began receiving a company disability pension. Prior to this time he received payments under defendant's sickness and accident disability plan for six months at full salary and six months at half salary.
Defendant, which is self-insured with respect to worker's compensation, refused to make any compensation payments to plaintiff. The basis of this refusal was the contention plaintiff's disability did not result from his work related injury, but rather from the off the job incident occurring on December 9, 1980. Plaintiff filed suit seeking worker's compensation benefits, penalties and attorney fees. Following trial, judgment was rendered on October 9, 1984 in favor of plaintiff, finding him to be permanently partially disabled. The court awarded plaintiff $23,472.00 in past compensation benefits, $163.00 per week in future benefits, $20,066.02 for medical expenses, as well as full statutory penalties and $3,500.00 in attorney's fees, plus legal interest. Defendant was cast for all costs. Defendant has perfected a suspensive appeal from this judgment. Plaintiff answered the appeal, requesting an increase in attorney's fees.
The first issue raised by defendant is whether a causal connection existed between plaintiff's January 28, 1980 job related accident and his subsequent disability. Defendant maintains the work accident had absolutely no causal connection with plaintiff's disability, since plaintiff had fully recovered from this accident when he returned to full duty on June 9, 1980. In support of its position, defendant relies on a medical form submitted to it by Dr. Sinclair, dated June 9, 1980, indicating plaintiff would suffer no permanent physical impairment from his work-related injury, as well as the fact plaintiff did not consult a physician between June 9, and December 10, 1980. Defendant asserts plaintiff's disability is due entirely to the injury he received on December 9, 1980 while bending over to put on a shoe.
The law is clear that when a work-related injury is exacerbated by a subsequent incident, the aggravation of the injury is regarded as a development of the initial accident, even if the subsequent incident occurs off the employer's premises. Stewart v. Hospital Affiliates International, Inc. of Baton Rouge, 404 So.2d 944 (La.1981); see also Hall v. H.B. Zachary Company, 402 So.2d 761 (La.App. 4th Cir.1981), writ denied, 406 So.2d 611 (La.1981). In the present case, the trial court specifically found plaintiff's disability was related to his work injury and the incident on December *965 9, 1980 was merely an "indication" of an existing condition.
The evidence presented by plaintiff more than adequately supports the trial court's findings. Initially, we note it is undisputed plaintiff suffered a work injury to his back on January 28, 1980. Further, in a deposition which was filed into evidence, Dr. Sinclair clearly indicated a belief plaintiff's work injury either produced or aggravated his subsequent condition, resulting in his disability. No contradictory medical evidence was presented. The only other medical testimony introduced was the deposition of Dr. Anthony Ioppolo, the neurosurgeon who performed both of plaintiff's disc operation. In his deposition Dr. Ioppolo declined to express an opinion as to whether plaintiff's disability was casually related to his work accident, although he had earlier written a letter to plaintiff indicating a belief such a connection existed. (Plaintiff's exhibit number 1.) Additionally, defendant's argument that plaintiff suffered absolutely no back problems from June to December of 1980 is refuted by plaintiff's testimony to the effect he continued to suffer intermittent low back pain and was unable to perform some of his job duties during this period.
The trial court's credibility determinations and factual findings are entitled to great weight upon appeal and will not be disturbed in the absence of manifest error. Our thorough review of the record reveals no manifest error in the court's conclusion plaintiff's disability was causally related to his work accident of January 9, 1980.
Defendant next argues the trial court erred in not allowing it a credit against worker's compensation for payments it made to plaintiff under its sickness and disability benefits program. In making this argument, defendant relies on La.R.S. 23:1206 which at the time of plaintiff's injury provided as follows:[1]
"Any voluntary payments made by the employer ... to the injured employee ... and accepted by the employee, which, by the terms of this act, were not due and payable when made, may, subject to the approval of the court, be deducted from the payments to be made as compensation...."
In order for an employer to receive credit for payments made under a sickness and accident disability plan, it must show such payments were made and received as compensation. Naquin v. Texaco, Inc., 423 So.2d 31 (La.App. 1st Cir.1982); Caston v. Combined Insurance Company of America, 308 So.2d 287 (La.App. 1st Cir.1975). In Naquin this court stated:
"It is well established that sick leave payments are benefits which the employee has already earned by virtue of past services rendered and therefore may not be credited against compensation due. Kaupp v. City of New Orleans, 248 So.2d 99 (La.App. 4th Cir.1971); Guerrera v. City of New Orleans, 212 So.2d 223 (La.App. 4th Cir.1968); Hammond v. Sewerage & Water Board of New Orleans, 204 So.2d 699 (La.App. 4th Cir. 1967); Chase v. Warren Petroleum Corporation, 168 So.2d 861 (La.App. 2nd Cir.1964). Further, in order for an employer to receive a credit against workmen's compensation payments, the employer must show the amounts were paid as compensation and not as an insurance type payment for which the employee has been paying premiums during his employment. Gonzales v. Coastal Wire Warehouse, Inc., 328 So.2d 923 (La.App. 4th Cir.1976)."at p. 38.
Defendant attempted to meet this burden by introducing a copy of its sickness and accident disability plan into evidence.[2] Defendant *966 relies on certain language contained in this plan to show payments made under it were meant as compensation. We find defendant's argument to this effect unpersuasive. First, in order to receive a credit, the payments must be paid and received as compensation. There was no evidence the specific provisions relied upon by defendant were ever disseminated to defendant's employees in general, or plaintiff in particular. It has not been shown plaintiff was aware of these provisions. Although the plan provides an employee may elect to accept its benefits or to prosecute any claims it may have against defendant at law, no such election was shown in this case. The plan specifically provides such an election shall be in writing and shall release defendant from all claims and demands the employee may have against it. There was no evidence of such an election by plaintiff, raising the implication he was neither required to nor made an election to receive the plan's benefits in lieu of compensation. Further, defendant's claim that the payments it made were intended as compensation is belittled by its consistent refusal to acknowledge plaintiff was entitled to worker's compensation. For these reasons, we conclude defendant has not established it is entitled to a credit against compensation for the payments it made under its sickness and accident benefits plan.
Defendant also argues the trial court erred in making an award to plaintiff for medical expenses, since these expenses were paid by Blue Cross and Travelers. In its brief, defendant maintains Blue Cross and Travelers were merely administrators of a medical benefits program which was totally funded and maintained by it. However, no evidence to this effect was presented at trial.
In order for an employer to receive credit for medical payments made by an insurer, it must be shown these payments were intended as compensation. Gonzales v. Coastal Wire Warehouse, Inc., 328 So.2d 923 (La.App. 4th Cir.1976); Caston v. Combined Insurance Company of America, supra. This requirement has not been met in the present case. Although it was shown plaintiff paid no premiums for his insurance coverage and his medical expenses had been paid, it was not shown under what type of policy or on what basis these payments were made. In the absence of evidence to the contrary, it is reasonable to assume the policy was of the standard type, naming the employee and not the employer as beneficiary. Thus, defendant has not shown it paid these expenses itself or provided them as compensation. See Rivers v. Macco, 391 So.2d 873 (La.App. 4th Cir.1980). Under these circumstances, defendant has failed to establish it is entitled to a credit for the medical expenses paid.
Defendant next argues the court erred in not taking income earned by plaintiff subsequent to his partial disability into consideration in awarding compensation. Plaintiff testified he operates a small air conditioning and electrical business. However, since his disability began, he can only bid on jobs and then subcontract the work out to others. Plaintiff's income tax returns show his business lost $3,884.00 in 1980, made $2,516.00 in 1981, $5,234.00 in 1982 and $1,318.00 in 1983.
As a partially disabled worker, plaintiff is entitled to compensation benefits in the amount of 662/3rds percent of the difference between his former wages and any lesser wages he actually earns during the period of his disability, but not to exceed 450 weeks, La.R.S. 23:1221.[3] In 1982, the year of the business's highest earnings, plaintiff's income from this source amounted to $100.65 per week. When employed by defendant, *967 plaintiff earned $354.40 per week.[4] Sixty-six and two-thirds percent of the difference between $364.40 and $100.65 is $175.82. See Martin v. H.B. Zachary Co., 424 So.2d 1002, 1007 (La.1982). Since the amount of this difference exceeds the maximum amount of compensation allowed, the trial court committed no error in awarding plaintiff the maximum rate of compensation permitted.
However, as correctly argued by defendant, the trial court erred in awarding plaintiff compensation in the amount of $163.00 per week, which was the maximum benefit permitted on December 9, 1980, when plaintiff's condition became permanently disabling. The maximum compensation permitted on the date plaintiff's original injury occurred was only $149.00 per week.
La.R.S. 23:1202, which sets out the maximum and minimum rates of compensation payable, clearly refers to the date of the occurrence of an injury for determination of the applicable rate of compensation. Even though compensation is not due until the employee's condition becomes disabling, the applicable rate of compensation is determined according to the date of the accident which ultimately results in the disability. La.R.S. 23:1202; Harris v. Louisiana Paving Co., Inc., 427 So.2d 1352 (La. App. 2d Cir.1983); Wheat v. Ford, Bacon and Davis Const. Corp., on rehearing, 424 So.2d 293, 300 (La.App. 1st Cir.1982), writs denied, 429 So.2d 155, 158 (La.1983). Accordingly, the proper rate of compensation to plaintiff is the maximum rate of compensation applicable on January 9, 1980. Therefore, the judgment of the trial court will be amended to provide plaintiff is entitled to receive compensation in the amount of $149.00 per week during the period of his disability, not to exceed a total of 450 weeks.
The final argument made by defendant is that an award of statutory penalties and attorney's fees was not warranted in this case. The purpose of La.R.S. 23:1201.1, which authorized awards for penalties and attorney's fees in certain worker's compensation cases, is to require the employer to pay timely the benefits owed to the employee and to avoid the necessity of the employee retaining an attorney to file suit. Even though the penalty statute speaks in terms of the requirement of 60 days notice, the absence of written notice to an employer of compensable injury cannot prevent collection of penalties where the employer had actual and immediate knowledge of the claimant's injury and disability, and its refusal to pay benefits was not based on absence of notice. Saltalamacchia v. Strachan Shipping Corporation, 156 So.2d 291 (La.App. 4th Cir.1963), reversed in part on other grounds, 246 La.91, 163 So.2d 548 (La.1964). In Lee v. National Tea Company, 378 So.2d 134 (La.App. 3d Cir.1979), the court held a self-insured employer, which was aware of the claimant's disability but failed to obtain any medical advice as to the cause of the disability, was liable for penalties and attorney fees for failure to pay benefits.
In the present case it is clear defendant's refusal to pay compensation was not based on lack of notice. Defendant had a duty to investigate plaintiff's claim, but failed to do so. Even though defendant had no medical evidence in its possession to the effect plaintiff's disability was not related to his earlier work accident, it arbitrarily refused to make payments on the basis of mere speculation and conjecture, without investigating the matter any further. Accordingly, the trial court acted properly in awarding plaintiff statutory penalties and attorney's fees.
In an answer to this appeal plaintiff requests an increase in attorney's fees from $3,500.00 to $6,000.00, due to the additional work required by this appeal. We believe an increase in the award is warranted to *968 compensate for the additional services made necessary by this appeal.

DECREE
For the above reasons, the judgment of the trial court is amended to reduce plaintiff's award for past compensation from $23,472.00 to $21,456.00 (144 weeks at $149.00 per week) and to reduce the amount of future compensation from $163.00 to $149.00 per week during the period of plaintiff's disability, but not to exceed a total of 450 weeks. The judgment of the trial court is also amended to increase the award of attorney's fees to the sum of $5,500.00. In all other respects, the judgment of the trial court is affirmed. Defendant is to pay all costs.
AMENDED AND, AS AMENDED, AFFIRMED AND RENDERED.
NOTES
[1] Prior to the amendment of this provision by Acts 1983, 1st Ex. Sess., No. 1, § 1.
[2] Plaintiff objected to the admissibility of this plan on the basis it was evidence pertaining to an affirmative defense which had not been pled in defendant's answer as required by La.Code Civ.P. art. 1005. Plaintiff argued defendant thus lost the right to claim any credit under La.R.S. 23:1206 for any payments made by it to plaintiff. The trial court overruled this objection and admitted the plan into evidence. We conclude this ruling was correct. The statutory right to claim a credit under La.R.S. 23:1206 is not an affirmative defense. Rather, the assertion of this statutory right is more in the nature of a judicial demand. Cf. Jackson v. Maloney Trucking & Storage, Inc., 442 So.2d 849, 854 (La.App. 4th Cir.1983), writ denied, 445 So.2d 441 (La. 1984); Lofton v. Louisiana Pacific Corp., 423 So.2d 1255 (La.App. 3d Cir.1982).
[3] Prior to the amendment of this provision by Acts 1983, 1st Ex. Sess., No. 1, § 1.
[4] This was plaintiff's rate of pay on the date of his original injury on January 28, 1980. Although it appears he subsequently received a raise, it is not clear in what amount. However, even basing compensation on his original salary, plaintiff is entitled to receive the maximum rate of compensation permitted at that time.