640 So.2d 655 (1994)
Freddie LACY, Plaintiff/Appellant,
v.
PPG INDUSTRIES, INC., Defendant/Appellee.
No. 93-1588.
Court of Appeal of Louisiana, Third Circuit.
June 1, 1994.
*656 John Ezell Jackson, Lake Charles, for Freddie Lacy.
Jeanne Marie Sievert, Lake Charles, for PPG Indus.
Before DOUCET, LABORDE, JJ., and BERTRAND[*], J. Pro Tem.
LUCIEN C. BERTRAND, Jr., Judge, Pro Tem.
Freddie Lacy sued his former employer, alleging that he was in need of further surgery to treat the aggravation of a work-related injury sustained at the L5-S1 disc level. He also sought disability benefits, penalties and attorney's fees under the Louisiana Workers' Compensation Law. The hearing officer dismissed the claim after finding that Lacy suffered a new injury at the L3-4 level that was not compensable, rather than the aggravation of an old one. Lacy appeals.

FACTS
On February 9, 1990, Lacy injured his lower back when he slipped several feet on a ladder while working for International Maintenance Corporation (IMC), a division of defendant, PPG Industries, Inc. He was ultimately diagnosed with a ruptured disc at L5-S1, and Dr. Clark Gunderson performed a diskectomy and laminectomy on March 20, 1990. After surgery, Lacy went through a physical therapy program and a work hardening course. On October 29, 1990, Dr. Gunderson released him to return to work with no restrictions. However, in a letter dated November 9, 1990, Dr. Gunderson reported that Lacy was still complaining of minor aching in his back and left buttock after returning to work. Although Dr. Gunderson believed that Lacy could return to work, he also recommended that Lacy not get involved in "overly strenuous activities."
Lacy did return to work at IMC in November of 1990. Although he claimed that he was only on light duty, his supervisors testified and he also admitted that he performed the more strenuous tasks of his job such as spray painting and sand blasting. He worked at IMC through May 13, 1991 when he was laid off in a work force reduction. He was later employed by Southern Siding for *657 about two months, and he collected unemployment compensation both before and after this second job.
In August of 1991, while he was unemployed, Lacy sustained a second accident. He testified that after climbing into the back of his pickup truck, he bent over to check the air in his spare tire when he suddenly felt a stabbing pain in his back. He immediately fell to his knees and crawled out of his truck. The pain was so intense that he stayed in bed for two weeks.
In February of 1992, he returned to Dr. Gunderson with complaints of burning pain down the left lower back through the knee, with numbness through his calf. Objectively, Dr. Gunderson noted an absent Achilles reflex, lumbar spasm, and positive straight leg raising at 60°. After reviewing the results of an MRI, a myelogram and a CT scan, all performed at that time, Dr. Gunderson concluded that Lacy's complaints were caused by an extruded, desiccated disc fragment at L5-S1, the level of his previous injury and surgery. The tests also revealed a bulge and possible herniation at L3-4, but Dr. Gunderson did not believe that this finding contributed to Lacy's symptoms. Dr. Gunderson explained that Lacy's complaints were consistent with an L5 nerve root problem rather than an L4 problem and that because of his previous injury, Lacy was predisposed to reinjury at L5-S1. Dr. Gunderson stated that as of February 1991, he would not approve Lacy for a pre-employment physical. He recommended further surgery to remove the extruded disc fragment at L5-S1.
At PPG's request, Lacy was examined by Dr. Lynn Foret on April 7, 1991. In his initial report, Dr. Foret stated that he found objective evidence of disc problems, including a right-sided herniation at L3-4 and a possible loose body at L5-S1. He stated that Lacy had to decide if he wanted conservative treatment or another laminectomy. Dr. Foret recommended that Lacy "continue on with the operative course," if his pain was severe. In his deposition, however, Dr. Foret did not concur with Dr. Gunderson's recommendation of surgery. He believed that the findings at L5-S1 represented scar tissue rather than an extruded fragment, and he was concerned about certain inconsistencies between Lacy's symptoms and the testing results. For example, although the CT and myelogram suggested a herniation at L3-4, Dr. Foret noted that Lacy's symptoms were consistent with an L5-S1 injury. He also noted that the L3-4 herniation was on the right, but Lacy's symptoms of absent reflex and pain were on the left. Dr. Foret was of the opinion that Lacy's pain was produced by a combination of defects at both levels, L5-S1 and L3-4.
After reading the reports of Drs. Gunderson and Foret, the hearing officer ordered that Lacy be examined by a court appointed expert, Dr. James Perry. Dr. Perry also disagreed with Dr. Gunderson's recommendation of surgery, although he stated that some other treatment might be appropriate. In the examination, he did not observe a diminished reflex or positive straight leg raising results, as did the other doctors. He concluded that the L3-4 injury was probably "more symptomatic," based in part upon a drawing by Lacy (that was not in the record) indicating front leg pain (the pattern of the L4 nerve root) and the result of an EMG which showed only the presence of an L4 nerve root lesion.

ANALYSIS
The hearing officer dismissed Lacy's claim after concluding that, more probably than not, the second accident resulted in a new injury at L3-4 rather than a reinjury at the L5-S1 level. Mindful of the deference owed to the trial court's findings of fact, we must nevertheless conclude that the hearing officer was manifestly erroneous in finding that Lacy did not reinjure his back at the L5-S1 level. The evidence does support a conclusion that Lacy sustained a new injury at L3-4, but the hearing officer's finding as to L5-S1 ignores the objective symptoms observed by Dr. Gunderson as well as Dr. Foret.
Both Dr. Foret and Dr. Gunderson testified that their findings and the plaintiff's complaints were consistent with an L5-S1 injury, rather than an L3-4 injury. Dr. Gunderson and Dr. Foret also noted that most of Lacy's symptoms, particularly his absent Achilles *658 reflex, weak plantar flexion and pain, were on the left side whereas the herniation at L3-4 was on the right. Although Dr. Perry did not clinically observe the same findings as Drs. Gunderson and Foret, he testified that the symptoms described by the other two physicians were consistent with an L5-S1 injury.
Dr. Gunderson based his diagnosis of an extruded disc fragment at L5-S1 on the results of an MRI, which read in part:
At the 5th lumbar interspace there is moderate disc degeneration with evidence of previous laminectomy on the left. There is demonstration of an 8 mm diameter area of decreased signal intensity which is surrounded by some epidural fibrosis which appears to represent an extruded desiccated disc fragment. This is located centrally posteriorly to the L5 disc with anterior impression upon the dural sac.
Of the three diagnostic tests that were performed in February of 1991, the above radiologist reading was the only one to specifically discuss the L5-S1 interspace. The readings of the myelogram and the CT scan made no mention of the previous laminectomy or scar tissue that were undeniably present at L5-S1. The MRI was performed "with and without Gadolinium," which Dr. Gunderson explained was to differentiate between scar tissue and disc fragments. In formulating his diagnosis and recommended treatment, Dr. Gunderson relied upon the most thorough report and, according to Dr. Perry, the most sensitive test.
Having determined that the record contains ample evidence to support a finding of a reinjury at L5-S1, we must now determine whether the plaintiff's second accident is compensable. It is well settled that the aggravation of a work-related injury is compensable even though it occurs away from the employer's premises after employment has terminated. Stewart v. Hospitals Affiliates International, Inc. of Baton Rouge, 404 So.2d 944 (La.1981); Kelly v. City of New Orleans, 414 So.2d 770 (La.1982); George v. Marcantel Feed Stores, Inc., 434 So.2d 440 (La.App. 3d Cir.), writ denied, 440 So.2d 758 (La.1983), modified, 446 So.2d 345 (La.App. 3d Cir.1984). Although not every accident that aggravates a work-related injury is compensable, the jurisprudence has found a causal connection between the two accidents when the employee has shown that the first injury "predisposed" him to the second injury. See Ledet v. Hogue, 540 So.2d 422 (La. App. 1st Cir.1989); Kelly, supra, at p. 772.
In the instant case, the evidence clearly shows that Lacy was predisposed to reinjury at L5-S1. Dr. Gunderson saw no reason to believe that Lacy's current condition was not due to his original accident of 1990. He explained that when a disc is removed, the result is a weakened condition with a 10% chance that the problem will recur. Although the accident of 1991 may have immediately preceded Lacy's pain, Dr. Gunderson believed that the underlying pathology was present from the initial injury. Even Dr. Perry agreed that Lacy was predisposed to reinjury at L5-S1. He described Lacy's L5-S1 problems as an aggravation of a preexisting condition, namely a ruptured disc, post surgery.
Arguing that the two accidents were unrelated, PPG points to the length of time between them and to the fact that Lacy was able to perform manual labor for six and one-half months after his medical release. Although these factors are relevant, they are not dispositive. In Young v. Western Electric Co., Inc., 486 So.2d 962 (La.App. 1st Cir.1986), 11 months had elapsed between the plaintiff's initial work-related back injury and a subsequent aggravation which occurred at his home. The plaintiff had returned to his former job six months before the second accident and made no complaints of pain to his supervisors. In Young, the court affirmed a finding that the two accidents were related, where the medical experts indicated that the plaintiff's work-related injury either produced or aggravated his subsequent condition and where the plaintiff testified that he continued to suffer from intermittent low back pain after returning to work.
We have already discussed the experts' opinions as to Lacy's predisposition to reinjury. When we add to the medical testimony *659 the ambiguous terms of Dr. Gunderson's release, specifically that Lacy was to avoid strenuous activity, and documentation that Lacy was still experiencing pain after his return to work, we find Lacy has proved a causal connection between the two accidents, as per the above jurisprudence.
Neither Drs. Foret nor Perry expressed any opinion as to Lacy's disability. However, Dr. Gunderson testified that he would not approve Lacy for a pre-employment physical. We find that Lacy is entitled to temporary total disability benefits from the date of Dr. Gunderson's diagnosis, February 18, 1992.
We also find merit to Lacy's claims for penalties and attorney's fees. In February of 1992, PPG was presented with objective evidence that Lacy reinjured his L5-S1 disc. None of the medical experts disputed the L5-S1 injury. The treatment recommended by Dr. Gunderson was only for the L5-S1 symptoms; indeed, he believed that the new L3-4 injury was asymptomatic. Dr. Foret confirmed that Lacy's symptoms were consistent with an L5-S1 injury. The only evidence that the new L3-4 injury was symptomatic is Dr. Perry's statement that Lacy indicated front leg pain on a diagram in November of 1992. This led Dr. Perry to conclude that the L3-4 injury was the "more symptomatic" of the two. However, Dr. Perry also testified that Lacy was suffering from the aggravation, post surgery, of the ruptured disc at L5-S1.
With the undisputed evidence of an L5-S1 injury, the inquiry should have focused on the cause of this injury, rather than the presence of a new and unrelated injury at L3-4. All three experts were unanimous in the opinion that a post surgery laminectomy patient was predisposed to reinjury at the same level and not another level.
The facts of this case clearly fall within the jurisprudential rules established in Stewart and applied in Kelly and Young, supra.
For the above reasons, the judgment rendered below is reversed. Judgment is rendered in favor of Freddie Lacy and against PPG Industries, Inc., finding that Lacy is entitled to temporary total disability benefits retroactive through February 18, 1992 and is in need of the surgery recommended by Dr. Clark Gunderson for treatment of an L5-S1 disc injury; Lacy is further awarded a 12% penalty on all past due compensation and attorney's fees in the amount of $7,500.00, for work performed at trial and on appeal. Legal interest is awarded from the due date of each award.
Costs of this appeal are assessed to defendant-appellee.
REVERSED AND RENDERED.
NOTES
[*] Judge Lucien C. Bertrand, Jr., Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.